UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-mj-00441-GMH-1 |
| | : | |
| CAREY JON WALDEN | : | 40 U.S.C. § 5104(e)(2)(G) |
| | : | Parading, Demonstrating, or Picketing in a |
| | : | Capitol Building |
| Defendant. | : | |
| | : | |

## STATEMENT OF OFFENSE

1. The Government respectfully submits the following Statement of Offense in support of a plea of guilty by defendant CAREY JON WALDEN to Count 4 of the Complaint in the above-captioned matter.

2. If this case were to go to trial, the government would prove the following facts beyond a reasonable doubt:

3. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

4. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

5. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November

3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

6. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

7. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

8. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

9. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

10. Carey John Walden traveled from Missouri to Washington, D.C. to attend a rally in support of then-President Donald Trump, held the morning of January 6.

11. After President Trump's speech, Carey John Walden walked to the U.S. Capitol Building. Carey John Walden climbed a wall to get to the area where he entered the U.S. Capitol Building. Carey John Walden entered the Capitol Building through a broken window at approximately 1:44 p.m., but he did not break the window. Carey John Walden was wearing a makeshift breathing apparatus immediately before he entered the U.S. Capitol Building.

12. The defendant freely admitted to the FBI that he entered the Capitol and that he took pictures while inside the building. Carey John Walden stayed inside the U.S. Capitol Building for a few minutes and then exited the Capitol at approximately 1:58 p.m..

13. The defendant knew at the time he entered the U.S. Capitol Building that that he did not have permission to enter the building and the defendant paraded, demonstrated, or picketed.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        Acting United States Attorney
        D.C. Bar No. 415793

By:   /s/ *James D. Peterson*
        JAMES D. PETERSON
        VA Bar 35373
        Trial Attorney
        United States Department of Justice
        1331 F Street N.W., 6th Floor
        SAUSA
        U.S. Attorney's Office for the District of Columbia
        Washington, D.C. 20530
        (202) 353-0796
        James.d.peterson@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

      I, Carey Jon Walden, have read this Statement of the Offense and have discussed it with my attorney.  I fully understand this Statement of the Offense.  I agree and acknowledge by my signature that this Statement of the Offense is true and accurate.  I do this voluntarily and of my own free will.  No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date:_____  _____
                                            Carey John Walden
                                            Defendant

## ATTORNEY'S ACKNOWLEDGMENT

      I have read this Statement of the Offense and have reviewed it with my client fully.  I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: _____  _____
                                            Christopher Michael Davis
                                            Attorney for Defendant